**MAYALL HURLEY P.C.**
**WILLIAM J. GORHAM (SBN:  151773)**
**wgorham@mayallaw.com**
**NICHOLAS J. SCARDIGLI (SBN:  249947)**
**nscardigli@mayallaw.com**
**ROBERT J. WASSERMAN (SBN:  258538)**
**rwasserman@mayallaw.com**
**JENNY D. BAYSINGER (SBN:  251014)**
**jbaysinger@mayallaw.com**
**2453 Grand Canal Boulevard**
**Stockton, California 95207-8253**
**Telephone:  (209) 477-3833**
**Facsimile:  (209) 477-4818**

**Attorneys for Plaintiff Daniel Figueroa, individually and on behalf of all others similarly situated, and as a proxy for the LWDA**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FIGUEROA,<br><br>        Plaintiff,<br><br>v.<br><br>AUTOZONERS, LLC, a Nevada limited liability company; and DOES 1-100, inclusive,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES FOR**<br><br>1. **FAILURE TO FURNISH ACCURATE WAGE STATEMENTS [Labor Code § 226(a)] – CLASS**<br>2. **FAILURE TO MAINTAIN ACCURATE WAGE STATEMENTS [Labor Code § 226(a)] – CLASS**<br>3. **UNLAWFUL BUSINESS PRACTICES [Cal. Bus. & Prof. Code § 17200] – CLASS**<br>4. **PRIVATE ATTORNEY GENERAL'S ACT CLAIM FOR RECOVERY OF CIVIL PENALTIES**<br>5. **AGE DISCRIMINATION – Individual**<br>6. **DISABILITY DISCRIMINATION - Individual**<br>7. **FAILURE TO ACCOMMODATE -** |



Individual
8. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS – Individual**
9. **DENIAL OF/INTERFERENCE WITH CFRA/FMLA – Individual**
10. **RETALIATION – CFRA – Individual**
11. **RETALIATION – FEHA - Individual**
12. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION - Individual**
**JURY TRIAL DEMANDED**

Plaintiff Daniel Figueroa ("Figueroa" or "Plaintiff") on behalf of himself and all others similarly situated, and on behalf of the general public as Private Attorney General, brings this action against Autozoners, LLC ("Autozoners"), a Nevada limited liability company, and Does 1 through 100, for violations of the California Labor Code and the California Business and Professions Code, and, individually, for violations of the California Fair Employment and Housing Act ("FEHA") and thereby seeks general, compensatory, punitive, and statutory damages, injunctive relief, declaratory relief, restitutionary relief, civil penalties, costs, and attorneys' fees, resulting from Defendants' unlawful and tortious conduct, as grounds therefore alleges:

## **PARTIES**

1.      Figueroa at all times relevant herein was employed as an hourly, non-exempt employee for Autozoners within California and was an "employee" of Defendants as defined by Government Code section 12926(c) and California Labor

1  Code section 3351.  Autozoners owns and operates AutoZone retail stores
2  throughout California.  Throughout his employment, Figueroa was assigned to
3  multiple AutoZone retail store locations in California, and specifically within Los
4  Angeles County.

2.      Figueroa is informed and believes that Autozoners is a limited liability
company organized and existing under the laws of the state of Nevada with its
principal place of business located at 123 S. Front Street, Memphis, TN 38103.  At
all relevant times herein, Autozoners was registered with the California secretary of
state, qualified to conduct, and conducting business within California and
specifically within Los Angeles County, and an "employer" as defined by
Government Code sections 12926(d) and 12940(a).

3.      Autozoners, and Does 1-100 are collectively referred to herein as
Defendants.

4.      Figueroa is not aware of the true names and capacities of the Defendants
sued herein as Does 1 through 100, whether individual, corporate, associate, or
otherwise and therefore sues such Defendants by these fictitious names.  Figueroa
will amend this Complaint to allege their true names and capacities when
ascertained.  Figueroa is informed and believes, and on that basis alleges, that each
of the fictitiously named Defendants is responsible in some manner for the
occurrences herein alleged and that Figueroa's injuries and damages herein alleged
were legally caused by such Defendants.  Unless otherwise indicated, each

Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

5.      Figueroa is informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action.  Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

## **VENUE AND JURY TRIAL DEMAND**

6.      This Court has diversity jurisdiction pursuant to 28 U.S.C. section 1332 as Defendants are residents of Nevada, and/or Tennessee, and Plaintiff is a resident of California and the amount in controversy with respect to the individual claims exceeds $75,000.  Jurisdiction over the class claims is proper pursuant to 28 U.S.C. section 1332, subdivision (d) as the Defendants reside in different states than at least one of the class members, believed to consist of more than 10,000 individuals, and the amount in controversy exceeds $5,000,000.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 because the pendent state law claims arise out of the same controversy between the parties.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §1391.   Defendants employ multiple persons at multiple locations within Los Angeles County, within the Central District of California, including Plaintiff, who have been subjected to the unlawful acts alleged herein.  Figueroa, on behalf of himself and the Class, and in his capacity as a proxy for the Labor and Workforce Development Agency, demands a jury trial.

## GENERAL ALLEGATIONS

8.    Figueroa submitted an application with AutoZone on January 27, 2011. **Exhibit 1**.[1]  He was officially hired on February 21, 2011 as an Assistant Store Manager.  At all times throughout his employment, Figueroa was properly classified as an hourly, non-exempt employee entitled to overtime wages and meal and rest periods in accordance with California law.

9.    By August, 2012, Figueroa was promoted to the position of Commercial Sales Manager ("CSM").  As a CSM Figueroa was eligible to earn commercial sales ("CS") bonuses in addition to his hourly wages.

10.    Consistently throughout his employment prior to August, 2017, Figueroa received positive performance reviews.  He was always rated as "Expectations Consistently Met" in connection with each evaluation of his performance conducted until August 26, 2017.

---

[1] Exhibits 1 through 10 are incorporated by this reference as though fully set forth herein.

11.     Figueroa suffered from chronic back pain as the result of a non-work-related motor vehicle accident at all times during his employment.  He also suffered a work-related knee injury on or about June 5, 2015.

12.     Figueroa was on leave for his knee injury from approximately June 5, 2015 through mid-July, 2015.  During that time period, District Manager Maria Hernandez ("Hernandez") contacted him by telephone.

13.     Hernandez is, and at all relevant times was, a supervisor as that term is defined in California Government Code section 12926, subdivision (t) employed by Autozoners.

14.     During the telephone conversation in 2015, Hernandez tried to convince Figueroa to accept the position of commercial salesman/back-up manager upon his return from his work-related injury.  Figueroa protested and advised Hernandez that position would constitute a demotion from CSM, would not afford him the opportunity to earn CS bonuses (and would thus result in a substantial pay cut), and he was not interested.

15.     In trying to convince Figueroa to consent to the unwarranted and unwanted demotion, Hernandez told Figueroa he was "too old to be doing this anymore."

16.     Figueroa was highly offended by Hernandez's obviously discriminatory comment and reported it to Defendants' human resources department.  Shortly thereafter, Hernandez called Figueroa and apologized for her inappropriate behavior.

Figueroa is informed and believes Defendants disclosed to Hernandez that he had complained about her and that such angered Hernandez.

17.    Figueroa returned to work after his knee injury in mid-July, 2015, although he continued treating for that injury through the time he ultimately separated from employment with Autozoners.

18.    In February, 2017, the pain associated with Figueroa's ongoing back issue became unbearable.  Non-invasive treatment, including physical therapy, had not been sufficiently corrective.  As a result, on February 2, 2017, Figueroa's physician Dr. Randolph C. O'Hara recommended he undergo decompression surgery.

19.    By mid-February, 2017, Figueroa was wheelchair bound as a result of his back pain.  Figueroa determined surgery was the most appropriate course in light of the pain and its impairment of his daily life activities, including sleeping and working.  Figueroa advised Defendants that he would be having surgery and would need associated leave for approximately three (3) months to recover.

20.    Figueroa provided Autozoners with Dr. Randolph's February 2, 2017 note.  See **Exhibit 2**.

21.    During the two weeks preceding his back surgery, Figueroa took vacation leave.

22.    Figueroa underwent back surgery on March 6, 2017.

23.    Figueroa was off of work as a result of his back surgery and attendant recovery from March 6, 2017 through early July, 2017—a period of less than five (5) months.  At the time Figueroa went on medical leave, he was working as a CSM and earning an hourly wage of $17.26 plus quarterly CS bonuses.  Wage Statement 2/12/2017-2/25/2017, attached as **Exhibit 3.**

24.    Autozoners did not designate any period of Figueroa's leave as FMLA or CFRA and did not provide him any information regarding those available protected leaves.  Autozoners did not provide Figueroa with any paperwork relating to FMLA/CFRA leave in connection with his 2017 back surgery.  Autozoners did not request any paperwork or medical certification from Figueroa in connection with his back surgery and attendant medical leave.

25.    While Figueroa was out on medical leave (not designated as FMLA or CFRA to his knowledge), he received a letter from Autozoners indicating his "family leave" was going to expire and that he needed to return to work in order to maintain his position.

26.    Upon receiving the letter, Figueroa contacted Autozoners human resources and spoke to Osha.  Figueroa explained he was not ready to return to work as he had not fully recovered from his surgery, but that he could talk to his doctor to try to get clearance if he needed to in order to preserve his position.

27.    Osha advised Figueroa that there was no concern about his previous position as a CSM in the Long Beach store location being filled and that he was "safe" to take additional time off as necessary to recover.

28.    Figueroa then submitted a doctor's note to Autozoners extending his leave an additional thirty (30) days to facilitate his recovery.

29.    When Figueroa was ready to return to work, in early July, 2017, he contacted Hernandez to advise her.  Hernandez told him there was a process that needed to occur, including getting insurance clearance, before he could actually return to work.

30.    At the time Figueroa advised Hernandez he was cleared and ready to return to work, his previous CSM position at the Long Beach (Anaheim Street) location was open and available.

31.    Upon his return, Hernandez advised Figueroa his previous position as CSM at the Long Beach location had been filled.  Figueroa is informed and believes, Hernandez hired a new employee and/or transferred an employee to his CSM position at the Long Beach location during the period of time she asserted the reinstatement process was occurring *after* she was advised Figueroa was medically cleared to return.

32.    There was no business necessity to fill the position during that time. Waiting the additional time until Figueroa was "cleared" through Autozoners

internal procedures to return to work would not have caused any undue hardship on Autozoners.

33.    Figueroa returned to work after his back surgery in early mid-July, 2017.  Upon his return, Figueroa was transferred to an AutoZone store location in Wilmington, California, demoted to the position of commercial salesman/back-up manager, and his hourly wage was reduced to $15.66.  Wage Statement 7/16/2017-7/29/2017, attached as **Exhibit 4**.

34.    Upon his return, Figueroa had work restrictions, including lifting limitations of 10 pounds imposed by his surgeon.  Defendants were aware of the lifting restrictions.  Despite these restrictions, Figueroa was routinely assigned to make auto parts deliveries to customers that required him to lift in excess of 25 pounds.

35.    Despite knowledge of the restrictions, Autozoners did not afford Figueroa any accommodations and instead assigned him tasks that plainly violated the medical restrictions his surgeon had prescribed.

36.    The initial store Figueroa was transferred to after his return from leave was not a desirable assignment for Figueroa.  The Wilmngton store catered to a primarily Spanish-speaking customer and Figueroa does not speak Spanish. Hernandez was aware Figueroa would have difficulty communicating with the customers at the Wilmington store location and transferred him to that location to punish him for taking medical leave and to push him out of employment.

37.     Figueroa complained to Hernandez about the Wilmington assignment and the fact he believed his skills were being wasted because he could not communicate with the Spanish-speaking customer base.  Upon his request, Figueroa was then transferred to the Carson, California AutoZone, though still as a back-up manager/commercial salesman.

38.     Within six weeks of his return from back surgery, Figueroa received his first-ever performance evaluation indicating "Expectations Not Consistently Met." See **Exhibit 5**.  In the six years of his employment preceding August 26, 2017—and the 6 years preceding his medical leave of absence—Figueroa had always been rated at or above expectations.  Figueroa is informed and believes Defendants were motivated to demote him, reduce his hourly wage, take away his opportunity for bonuses, and issue a negative performance evaluation by discriminatory animus against him because of his age and disability and/or retaliatory animus towards him for taking disability leave (requesting disability accommodation) and/or complaining about Hernandez's inappropriate age-related discriminatory comment.

39.     Routinely throughout his employment, Figueroa was unable to take required meal and rest breaks in accordance with California law.  There were frequent occasions Figueroa was not able to take meal/rest periods timely and/or unable to take them at all.

40.     This inability resulted from Defendants' policies, practices, and procedures to understaff stores such that breaks could not be afforded as complete

relief from duty for designated periods was impossible and/or employees could not be relieved of duty before the end of his/her 5th hour of work.  Evidencing the entrenched policy, pattern, and practice of not providing meal periods, Defendants paid Figueroa and its other California non-exempt employees missed meal period premiums pursuant to Labor Code section 226.7 on frequent occasions.  See Exh. 4; Wage Statement 12/18/2016-12/31/2016, attached as **Exhibit 6** hereto for reference.

41.    During the times Figueroa was eligible to receive bonus earnings as a CSM, calculation of the bonus was based on a percentage of the sales made in the store(s) Figueroa worked in as a CSM.  Initially, the bonuses were calculated and paid on a monthly basis.  For some unknown reason, in August, 2014, Defendants began paying the bonuses quarterly instead of monthly.

42.    After Defendants began calculating bonuses on a quarterly basis, the associated wages paid were not paid timely in accordance with California Labor Code section 204.  Specifically, the quarterly bonus wages would not be paid until more than a month and a half after the close of the bonus period.

43.    By way of example, the bonus wages (and associated back-overtime wages attendant to those bonus wages) Figueroa earned between 11/20/2016 and 2/11/2017 were not actually paid until March 31, 2017.  Wage Statement 03/12/2017-03/25/2017 attached as **Exhibit 7**.  The bonus wages were not paid until the payday for the pay period 3/12-3/25—the third pay period after the close of the bonus period.

44.    There is no explanation for the delay, particularly considering that when bonus wages were earned and calculated on a monthly basis, Defendants were able to pay them in conjunction with the pay period in which the bonus period ended (i.e. in conjunction with the wage statement issued for the pay period in which the bonus was earned).  Wage Statement 07/06/2014-07/19/2014 attached as **Exhibit 8** hereto for reference.

45.    At all times throughout his employment, Defendants furnished Figueroa wage statements that did not accurately identify total hours worked as expressly mandated by Labor Code section 226, subdivision (a)(2).  Rather than identify the total hours worked, the number appearing under "Hours" on the line item designated "Total" is comprised of the total hours paid for, not the total hours worked.  Exhs. 3, 4, 6.

46.    This practice of including non-work hours, such as vacation time, disability earnings, and meal period premiums, was not the result of inadvertence or mistake and was instead systematic.  The error occurred during each and every pay period, and in conjunction with each and every wage statement furnished by Autozoners to Figueroa throughout his employment.

47.    Each wage statement Autozoners furnished to a California non-exempt employee between February 1, 2017 and November 9, 2017 identified all hours the employee was being compensated for during the pay period, regardless of whether

the hours were actually spent working or not, on the "total" line under the "hours" heading.

48.     As a result of the failure, Figueroa and other non-exempt employees could not promptly and easily determine the total number of hours worked by simply reviewing the wage statements.  The wage statements inaccurately identified a number as "total hours" that did not correspond with the number of hours the employee actually spent performing work.

49.     In November, 2017, Figueroa quit his employment as a direct result of the retaliation he had been subjected to from the time he returned from medical leave in July, 2017.

50.     On February 6, 2018, Figueroa submitted a complaint to the California Department of Fair Employment and Housing and received a right to sue notice the same day.  A true and correct copy of Figueroa's complaint to the DFEH and right to sue are attached hereto as **Exhibit 9** and incorporated herein by reference.

## PRIVATE ATTORNEY GENERAL ACT ALLEGATIONS

51.     The Private Attorney General Act ("PAGA"), as set forth at California Labor Code section 2698 et seq., is and at all times relevant herein was applicable to Rodriguez's employment with Defendants.

52.     Pursuant to Labor Code section 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code

may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code section 2699.3.

53.    Figueroa was employed by Defendants and the alleged violations were committed against him during his time of employment. Figueroa is therefore an aggrieved employee as defined by Labor Code section 2699(c).  Other current and former employees are also aggrieved employees in that one or more of the alleged violations were also committed against them during their time of employment with Defendants.

54.    Pursuant to Labor Code section 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the Labor Code or, where no civil penalty is specifically provided, one hundred dollars ($100) for each aggrieved employee per pay period for the initial

violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

55.    Pursuant to California Labor Code section 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed.  Furthermore, any employee who prevails in any such action shall be entitled to an award of reasonable attorney's fees and costs.

/ / /

56.    Defendants violated the Labor Code as to Figueroa and other current and former employees it employed and/or employs within California by willfully failing to do the following:

a.    <u>Provide Meal and Rest Periods:</u>  An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes.  Similarly, employees are entitled to regular rest periods of 10 minutes for every 4 hours worked.  Because of their busy schedules, Figueroa and Defendants' other former and current employees are often unable to take compliant meal and rest periods as required by Labor Code sections 226.7 and 512.  Although Defendants paid Figueroa and other employees meal period premiums, such does not obviate the violation as California law is clear there is no lawful choice between providing a compliant meal/rest period and paying a meal period premium.  *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256; *Wert v. US Bancorp* (S.D. Cal. 2016) 2016 U.S. Dist. LEXIS 37302 *14.

b.    <u>Failure to Furnish Accurate Itemized Wage Statements:</u>  Because of the violations set forth above, and as evidenced in the samples of Figueroa's wage statements attached hereto, the wage statements

furnished by Defendants violated Labor Code section 226(a) insofar as they failed to accurately show:

    i.   The total number of hours worked by the employee in violation of section 226(a)(2); Because the wage statements furnished by Defendants confusingly include items such as meal break premiums and Short-Term Disability payments, the total hours which appear on the wage statements of Figueroa and the other former and current employees do not accurately reflect the total hours actually worked by the employees.

    c.   <u>Maintain copies of accurate itemized wage statements</u>:  Because of the violations set forth above, it is further alleged that Defendants failed to maintain accurate copies of their employee's wage statement in accordance with section 226(a).

57.    Pursuant to Labor Code § 2699.3, an aggrieved employee, including Figueroa, may pursue a civil action arising under PAGA after the following requirements have been met:

    a.   The aggrieved employee shall give written notice by certified mail to the LWDA and the employer (hereinafter "Employee's Notice") of the specific provisions of California Labor Code alleged to have

been violated, including the facts and theories to support the alleged violations;

b. The LWDA shall provide notice (hereinafter "LWDA's Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within 60 days of the postmark date of the Employee's Notice.  Upon receipt of the LWDA's Notice, or if the LWDA does not provide notice with 65 calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

c. For all alleged violations not enumerated in Labor Code § 2699.5, including violations of Labor Code section 226(a)(8), the employer is given thirty-three (33) days to cure and notify the aggrieved employee by certified mail that the violation has been cured.  If the violation is not cured, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

58.    On November 9, 2017, Figueroa provided written notice by certified mail to the LWDA and Defendants of the specific provisions of the Labor Code

alleged to have been violated by Defendants, specifically including violations of Labor Code sections 512 and 226(a)(2), including the facts and theories to support the alleged violations.  A true and correct copy of Figueroa's November 9, 2017 notification letter is attached hereto as **Exhibit 10** and incorporated herein by reference.

59.    As of the date of this filing, which is more than sixty-five (65) days after November 9, 2017, the LWDA has not provided written notice that it intends to investigate Figueroa's allegations.  Accordingly, Figueroa satisfied the administrative prerequisites under Labor Code § 2699.3 to bring a civil action to recover penalties against Defendants, in addition to other remedies, for violations of California Labor Code §§ 512 and 226(a)(2).

## <u>CLASS ACTION ALLEGATIONS</u>

60.    Figueroa seeks to maintain this action as a class action as to the first through third causes of action below pursuant to Federal Rules of Civil Procedure, Rule 23.  The proposed class consists of:

<u>**Failure to Furnish Class**</u>

All current and former non-exempt California employees of Defendants who received a wage statement between February 8, 2018 and the date of Final Judgment (the "Failure to Furnish Class Period");

**Failure to Maintain Class**

All current and former California employees of Defendants who received a wage statement from February 8, 2014, through the date of final judgment, which Defendants had an obligation to maintain a copy of that is compliant with Labor Code § 226(a) at the place of employment or at a central location within the State of California, between February 8, 2016 through the date of final judgment (the "Failure to Maintain Class").

The Failure to Furnish Class and the Failure to Maintain Class are collectively referred to herein as the "Class".

61.    There are numerous questions of law and fact common to each of the Class Members, including but not limited to the following:

  a. Whether Defendants had a uniform policy and practice relating to the provision of wage statements to employees within California that fully complies with Labor Code section 226;

  b. Whether the wage statements furnished by Defendants comply with Labor Code section 226(a)(2);

  c. Whether including non-work hours such as meal break penalties and PTO in total hours worked violates Labor Code section 226(a)(2);

d.   Whether a reasonable person would be able to readily ascertain this information without reference to other documents or information; and

e.   Whether Defendants failure to comply with Labor Code section 226(a)(2) was knowing and intentional;

f.   Whether Defendants failure to comply with Labor Code section 226(a)(2) was the result of an isolated and unintentional payroll error due to clerical or inadvertent mistake;

g.   Whether Defendants failure to comply with Labor Code section 226(a)(2) caused the Class Members injury;

h.   Whether Defendants maintained wage statements containing all of the information required, and in the manner prescribed, by Labor Code section 226(a).

i.   Whether Defendants' various violations as to the Class Members serve as a predicate for claims under the UCL

62.   Figueroa is a member of the Class.  Figueroa's claims are typical of the claims of the Class as a whole, as each of the claims arises out of application of Defendants' uniform policies, patterns, and practices to each individual class member.  Each individual member of the Class has sustained and/or will sustain damage and injury as a proximate and/or legal result of Defendants' violations of the Labor Code identical to the injuries suffered by Figueroa.

63.    The defenses of Defendants, to the extent that such defenses apply, are applicable, respectively, to the Wage Statement Class a whole and are not distinguishable as to the individual proposed member of the Class.

64.    Plaintiff will fairly and adequately protect the interests of the Class because he has the same interest in obtaining recovery, suffered the identical types of violations as every other proposed class member, and has retained counsel with extensive experience in litigation, including representative actions.  Plaintiff does not have any individual interest that conflicts in any way with those of the class as a whole and is in a position to represent the interests of the Wage Statement Class for the period of one (1) year prior to the initiation of this lawsuit.

65.    A class action is superior to any other method available for fairly and efficiently adjudicating the controversy because 1) joinder of individual class members is not practical, 2) litigating the claims of individual class members would be unnecessarily costly and burdensome and would deter individual claims, 3) litigating the claims of individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation if they were to bring individual claims, 5) class members would be discouraged from pursuing individual claims because the damages available to them are relatively small, and 6) California public policy encourages the use of the class

actions to enforce California's employment laws and protect individuals who, by virtue of their subordinate position, are particularly vulnerable.

66.    Judicial economy will be served by maintenance of this lawsuit as a class action.  To process numerous virtually identical individual cases will significantly increase the expense on the Court, the class members and Defendants, all while unnecessarily delaying the resolution of this matter.  There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court, and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

67.    Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, email, publication, or such other methods of notice as deemed appropriate by the Court.

### FIRST CAUSE OF ACTION
### VIOLATION OF LABOR CODE SECTION 226
#### (Failure to Furnish Accurate Wage Statements)
#### On Behalf of Plaintiff and the Failure to Furnish Class
#### Against Defendants and Does 1-100

68.    Plaintiff hereby realleges and incorporates by reference every paragraph set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

69.    Pursuant to Labor Code § 226(a) "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or

separately when the wages are paid by personal check or cash, an accurate itemized

statement in writing showing . . . (2) total number of hours worked by the employee .

. ."

70.    An employee suffering injury as a result of the knowing and intentional

failure by an employer to comply with Labor Code § 226(a) is entitled to recover the

greater of all actual damages or fifty dollars ($50) for the initial pay period in which

a violation occurs and one hundred dollars ($100) per employee for each violation in

a subsequent pay period, not to exceed the aggregate penalty of four thousand dollars

($4,000), and is entitled to an award of costs and reasonable attorney's fees.  Labor

Code § 226(e)(1).

71.    An employee is deemed to suffer injury if the employer fails to provide

a wage statement or if the employer fails to provide accurate and complete

information as required by any one or more of the items (1) to (9), inclusive, of

subdivision (a) and the employee cannot promptly and easily determine from the

wage statement alone, i) the amount of gross/net wages paid to the employee during

the pay period or any of the other information required to be provided pursuant to

Labor Code § 226(a) items (2) to (4), inclusive, (6) and (9), ii) deductions made by

the employer, iii) the name and address of the employer and iv) the name of the

employee and the last four digits of his or her social security number or employee

identification number.  Labor Code § 226(e)(2)(A) and (B)(i)-(iv).  "Promptly and

easily determine" means a reasonable person would be able to readily ascertain the

information without reference to other documents or information.  Labor Code § 226(e)(2)(C).

72.    During the relevant time period and as set forth above, Defendants failed to provide accurate itemized wage statements to Plaintiff and the members of the Class in violation of Labor Code § 226(a).

73.    Wherefore, Plaintiff and the members of the Class have been injured as set forth above and request relief as hereafter provided.  Plaintiff also hereby requests the civil penalty, attorney's fees and costs recoverable in a civil action brought by an aggrieved employee on behalf of herself and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

**SECOND CAUSE OF ACTION**
**VIOLATION OF LABOR CODE SECTIONS 226(a)**
**(Failure to Maintain Copies of Accurate and Complete Itemized Wage Statements)**
**On Behalf of Plaintiff and the Members of the Failure to Furnish Class Against Defendants and Does 1-100**

74.    Plaintiff hereby realleges and incorporates every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

75.    Labor Code § 226(a) further requires employers to maintain, for a period of not less than three years, at the place of employment or at a central location within the State of California, a copy of each of his or her employees' itemized wage statements.  A "copy" includes a duplicate of the itemized statement or a computer-

generated record that accurately shows all the information required by Labor Code § 226(a).

76.    Defendants have intentionally and willfully failed to maintain copies of accurate itemized wage statements for Plaintiff and the members of the Class in violation of Labor Code § 226(a).

77.    Wherefore, Plaintiff and the members of the Class have been injured as set forth above and request relief as hereafter provided.  Plaintiff also hereby requests the civil penalty, attorney's fees and costs recoverable in a civil action brought by an aggrieved employee on behalf of herself and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

### THIRD CAUSE OF ACTION
### UNFAIR/UNLAWFUL BUSINESS PRACICES
### (Cal. Bus. & Prof. Code § 17200)
### On Behalf of Plaintiff and the Class
### Against Defendants and Does 1-100

78.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

79.    Defendants' statutory violations alleged herein, and each of them, are unfair and unlawful business practices within the meaning of Business & Professions Code § 17200 et. seq.

80.     In particular, Defendants' failures to furnish accurate, itemized wage statements to, and failures to maintain copies of accurate itemized wage statements for, members of the Class violate Labor Code § 226.

81.     Defendants' conduct towards the Class violates these and other California laws.

82.     Plaintiff and the other members of the Class have suffered actual harm as a direct and proximate result of Defendants' unfair and unlawful business practices, including being deprived of wages and interest on such amounts.

83.     Plaintiff requests that the court order restitution by Defendants to Plaintiff and the other members of the Class.

84.     Plaintiff is informed and believes that Defendants are continuing to treat members of the Class unlawfully and will continue to do so unless enjoined by this Court.

85.     Wherefore, Plaintiff and the other members of the Class have been damaged as set forth above and request relief as hereafter provided.

## FOURTH CAUSE OF ACTION
### VIOLATION OF PRIVATE ATTORNEY GENERAL ACT ("PAGA")
### On Behalf of the LWDA through Plaintiff as its Proxy
### Against Defendants and Does 1-100

86.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

87.     Plaintiff is an "aggrieved employee" under the PAGA as he was employed by Defendants during the applicable statutory period, from November 9, 2016 through the present, and suffered one or more of the Labor Code violations outlined herein.  As such, Plaintiff seeks to recover, on behalf of and as a proxy for the Labor and Workforce Development Agency (the "LWDA"), the civil penalties provided by the PAGA and reasonable attorneys' fees and costs.

88.     Plaintiff seeks to recover the PAGA civil penalties through a representative action permitted by the PAGA and *Arias v, Sup. Ct.* (2009) 46 Cal.4th 969.  Class certification of the PAGA claims is not required.

89.     Plaintiff seeks to enforce the California Labor Code and related regulations and Industrial Wage Order(s) on behalf of the LWDA and pursuant to the PAGA for a number of violations which include, but are not limited to, all of the following: Labor Code sections 204, 226, 226.7, 512, and 558.

90.     The civil penalty recoverable by an aggrieved employee in a PAGA action for violations of Labor Code sections 510 or 512, or any order of the IWC, is set forth at Labor Code section 558.  Labor Code section 558 provides a civil penalty of (1) fifty dollars ($50) for each underpaid employee for each pay period which the employee was underpaid for any initial violation and (2) one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid for each subsequent violation as well as an amount sufficient to recover underpaid wages.  Labor Code section 558 further provides that any employer or

other person acting on behalf of an employer who fails to pay overtime wages due shall be subject to the penalties set forth therein.

91.    Pursuant to Labor Code § 2699(f), the civil penalty recoverable in a PAGA action, when the Labor Code does not provide a civil penalty shall be $100 for the initial violation per employee per pay period and $200 for each subsequent violation per employee per pay period.

92.    As a result of the myriad violations of the Labor Code and applicable IWC Order(s), Plaintiff seeks recovery of civil penalties, attorneys' fees and costs pursuant to the PAGA as set forth below.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF GOV. CODE § 12940(a)**
**(Age Discrimination)**
**On Behalf of Figueroa, Individually**
**Against Defendants and Does 1-100**

93.    Plaintiff hereby realleges and incorporates by reference each and every paragraph above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

94.    The Fair Employment and Housing Act ("FEHA") explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of age over 40, pursuant to Gov. Code § 12940(a).

95.     Nonetheless, as set forth above, Defendants discriminated against Plaintiff based upon his age, including his age-related back condition.

96.     During his employment, Hernandez made comments that evinced her discriminatory bias against Plaintiff because of his age.  When he returned from medical leave in July, 2017, that bias manifested in a demotion, reduction in pay and benefits, and transfer, all designed to push Plaintiff out of Defendants' employment.

97.     As a result of Defendants' conduct, Plaintiff has suffered damages.

98.     Defendants' actions towards Plaintiff were committed or ratified by Defendants, and/or their managing agents and/or employees in an oppressive, fraudulent, and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

99.     As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

### SIXTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(a)
### (Disability Discrimination)
### On Behalf of Figueroa, Individually
### Against Defendants and Does 1-100

100.    Plaintiff hereby realleges and incorporates by reference each and every paragraph above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

101.    The FEHA explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against

such person in compensation or in terms, conditions or privileges of employment on the basis of physical disability or medical condition.  Gov. Code § 12940(a).

102.   At all times herein mentioned, Figueroa was qualified for his position as CSM based upon his work experience and performance history.

103.   Defendants were at all times material herein Figueroa's employer pursuant to Gov. Code § 12926(d) and were therefore barred from discriminating against their employees based on disability and/or perceived disability.

104.   Nevertheless, as set forth above, Defendants discriminated against Figueroa based on disability, perceived disability, and/or future perceived disability, in violation of Gov. Code § 12940(a).

105.   The acts taken toward Figueroa were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

106.   As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

///

///

///

///

///

## SEVENTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(m)
### (Failure to Accommodate)
### On Behalf of Figueroa, Individually Against Defendants and Does 1-100

107.  Plaintiff hereby realleges and incorporates by reference each and every above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

108.  The FEHA requires an employer to "make reasonable accommodation for the known physical or mental disability of an applicant or employee." Gov. Code § 12940(m).

109.  Defendants at all times material herein were Figueroa's employer pursuant to Gov. Code § 12926(d), knew of his disability and were required to reasonably accommodate him pursuant to Gov. Code § 12940(m).

110.  Nevertheless, as set forth above, Defendants failed to reasonably accommodate Figueroa.  Specifically, although Defendants allowed Figueroa to take a medical leave of absence, they punished him for doing so by failing to return him to his position upon the expiration of that leave, reducing his pay, and transferring him to a less desirable store location.

111.  Upon Figueroa's return from medical leave, Defendants failed to afford him the reasonable accommodation of lifting restrictions as prescribed by his physician.

/ / /

112. The acts taken toward Figueroa were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

113. As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE SECTION 12940(n)**
**(Failure to Engage in the Interactive Process)**
**On Behalf of Figueroa, Individually**
**Against Defendants and Does 1-100**

114. Plaintiff hereby realleges and incorporates by reference each and every paragraph above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

115. The FEHA requires an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical disability or known medical condition." Gov. Code § 12940(n).

116. Defendants at all times material herein were Figueroa's employer pursuant to Gov. Code § 12926(d), had knowledge of her disability and were required to engage in the interactive process pursuant to Gov. Code § 12940(n).

117.  Nevertheless, as set forth above, Defendants failed to engage in a timely, good faith interactive process with Figueroa.

118.  The acts taken toward Figueroa were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

119.  As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

## NINTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12945.2(a); (g)
### (Denial of/Interference with CFRA Rights)
### On Behalf of Figueroa, Individually
### Against Defendants and Does 1-100

120.   Plaintiff hereby realleges and incorporates by reference each and every paragraph above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

121.   Title 2, California Code of Regulations section 11094 provides that any violation of CFRA or its implementing regulations constitutes interference with CFRA rights and is prohibited.

122.   As of the time of his request for leave relating to his back surgery in February, 2017, and at all relevant times thereafter, Figueroa was eligible for leave under the CFRA.  Figueroa had been employed for a period of more than twelve (12) months (6 years) and had worked more than 1250 hours in the preceding twelve (12)

months.  At all relevant times Defendants were "covered employers" under 2 CCR 11087(d) as they directly employed Figueroa and directly employed more than 50 persons within a 75-mile radius of Figueroa's worksite.

123.   It is always the duty and obligation of a covered employer to designate leave as CFRA or CFRA-qualifying based on information provided by the eligible employee.  2 CCR § 11091(1)(A).  Figueroa provided Defendants notice of his need for leave for back surgery and to facilitate his recovery, which put Defendants on notice of Figueroa's need for leave for a CFRA-qualifying reason.

124.   Government Code section 12945.2 makes it unlawful for an employer to refuse to grant a request for leave due to the serious health condition of the employee if the employee meets the eligibility requirements outlined in 2 CCR 11087(e).  In order to adequately "grant" a request for leave, the employer must guarantee employment in the same or comparable position upon the employee's return.

125.   Government Code section 12945.2, subdivision (g) mandates that an employer must place an employee returning from leave with no less seniority than when the leave commenced.  Specifically, the employee must be returned "to the same position or to a comparable position that is equivalent (i.e., virtually identical) to the employee's former position in terms of pay, benefits, shift, schedule, geographic location, and working conditions, including privileges, perquisites, and status. The position must involve the same or substantially similar duties and

responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." (2 C.C.R. § 11089(b).)

126.    Fulfilling this legal duty by restoring Figueroa to his CSM position with substantially similar pay, benefits, and assignment following his return from leave would not have constituted an undue burden on Autozoners.

127.    Defendants violated numerous provisions of CFRA and its implementing regulations in connection with Figueroa. These violations included, but are not limited to, failing to discharge its obligation as employer to determine whether leave is CFRA/FMLA qualified, and to designate leave as CFRA qualified.

128.    Autozoners never made any determination as to the appropriate classification of any leave requested by Figueroa for his serious health condition arising out of his need to undergo back surgery.

129.    Defendants further interfered with Figueroa's CFRA rights by failing and refusing to return him to the same position, with the same assignments, rights, and responsibilities, upon his return from protected leave.

130.    The acts taken toward Figueroa were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

131.    As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

## TENTH CAUSE OF ACTION
### VIOLATION OF GOV. CODE § 12945.2(l)
### (Retaliation - CFRA)
### On Behalf of Figueroa, Individually
### Against Defendants and Does 1-100

132.   Plaintiff hereby realleges and incorporates by reference each and every paragraph above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

133.   The California Family Rights Act ("CFRA") prohibits an employer from discharging or discriminating against an employee because that person has exercised their right to family care and medical leave and /or attempted to exercise his/her right to request family care and medical leave.  Gov. Code § 12945.2(l).

134.   Nonetheless, Defendants retaliated against Figueroa for requesting and/or taking protected medical leave by refusing to reinstate him at his CSM position, demoting him to commercial sales/back-up manager, reducing his pay, and transferring his assignment upon his return after back surgery and based on Figueroa's exercise (or attempted exercise) of his rights under the CFRA, all of which ultimately forced Figueroa to quit.

135.   The acts taken toward Figueroa were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

136.    As a direct and proximate result of Defendants' conduct, Figueroa has
been harmed and requests relief as hereafter provided.

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF GOV. CODE § 12940(h)
### (Retaliation - FEHA)
### On Behalf of Figueroa, Individually
### Against Defendants and Does 1-100

137.    Plaintiff hereby realleges and incorporates by reference each and every
paragraph above as though fully set forth herein, except as said paragraphs are
inconsistent with the allegations of this cause of action.

138.    FEHA explicitly prohibits an employer from discharging, expelling, or
discriminating against any person because the person has opposed any practices
forbidden by FEHA, or because that person has engaged in protected activity under
the FEHA.  Gov. Code § 12940(h).

139.    Nonetheless, as set forth above, Defendants retaliated against Figueroa
based upon his engaging in protected activity under the FEHA; specifically,
requesting a reasonable accommodation of disability leave, requesting a reasonable
accommodation of lifting restrictions, and/or complaining about Hernandez's
discriminatory age-related comment.

140.    Defendants' actions towards Figueroa were committed or ratified by
Defendants, and/or their managing agents and/or employees in an oppressive,
fraudulent, and malicious manner in order to injure or damage Figueroa, thereby
justifying an award of punitive damages.

141.   As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

### TWELFTH CAUSE OF ACTION
### VIOLATION OF GOV. CODE § 12940(k)
### (Failure to Prevent Discrimination and Retaliation)
### On Behalf of Figueroa, Individually
### Against Defendants and Does 1-100

142.   Plaintiff hereby realleges and incorporates by reference each and every above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

143.   FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Gov. Code § 12940(k),

144.   Nevertheless, as set forth above, Defendants failed to prevent or remedy the discrimination and retaliation against Figueroa.

145.   Defendants' actions towards Figueroa were committed or ratified by Defendants, and/or their managing agents and/or employees in an oppressive, fraudulent, and malicious manner in order to injure or damage Figueroa, thereby justifying an award of punitive damages.

146.   As a direct and proximate result of Defendants' conduct, Figueroa has been harmed and requests relief as hereafter provided.

### PRAYER FOR RELIEF

WHEREFORE, Figueroa prays judgment against Defendants and each of them as follows:

**As to the First, Second, and Third Causes of Action:**

1.    That this Court certify the Classes identified in Paragraph 60;

2.    That this Court certify Figueroa as the representative of the Classes identified in Paragraph 60;

3.    For declaratory relief that Defendants violated the aforementioned Labor Code provisions; namely Labor Code section 226;

4.    That this court award actual, compensatory, special, and general damages, as well as restitutionary relief to Figueroa and the other members of the Class;

5.    For injunctive relief, including that available under Labor Code section 226(h) and Business and Professions Code Section 17203;

6.    That this Court award statutory penalties, including but not limited to those available under Labor Code § 226 to the members of the Class;

7.    For statutory attorneys' fees and costs, including but not limited to those available under Labor Code §§ 218.5, 226; 1194, and 1197.1;

8.    For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including those available under Civil Code sections 3287(a) and 3289(b) and Labor Code sections 218.6; and

9.    For such other and further relief as the court deems just and proper.

**As to the Fourth Cause of Action**

1.  For civil penalties available pursuant to Labor Code section 2699(f) and the penalty provisions incorporated therein, including but not limited to sections 558, for Defendants' violations of the California Labor Code, including Labor Code sections 226, 226.7, and 512;

2.  For attorneys' fees and costs pursuant to Labor Code section 2699(g) and 218.5;

3.  For all other and further relief as the Court deems just and proper.

**As to the Fifth through Eleventh Causes of Action:**

1.  For economic (special) and non-economic (general) damages in an amount yet unknown, but in excess of $75,000;

2.  For injunctive relief pursuant to Government Code section 19265(c);

3.  For punitive and/or exemplary damages;

4.  For statutory attorneys' fees and costs, including those available under Government Code section 12965(b);

5.  For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civil Code sections 3287(a) and 3289(b);

///

///

6.    For such other and further relief as the Court deems just and proper.


DATED:  February 8, 2018            **MAYALL HURLEY, P.C.**


By: */s/ Jenny D. Baysinger*
            WILLIAM J. GORHAM III
            NICHOLAS J. SCARDIGLI
            ROBERT J. WASSERMAN
            JENNY D. BAYSINGER
            Attorneys for Plaintiff
            DANIEL FIGUEROA, individually,
            and on behalf of all other similarly
            situated, and as a proxy for the
            LWDA